HARRY BRESLOW and BARNET SHEFKOWITZ, Copartners, Trading as the EMPIRE TEXTILE MILLS, Appellants, *v.* MANCHESTER, ROBERTSON, ALLISON, LIMITED, Respondent.

First Department, January 13, 1922.

Sales — action for purchase price of merchandise — defense that rubbish had been substituted — evidence — hearsay — reversible error to admit testimony of complaints by other parties as to substitutions — payment — check unacceptable should be returned.

In an action to recover the purchase price of merchandise it was reversible error to permit the defendant, in order to sustain the defense that rubbish had been substituted for the goods before the boxes were delivered to the railroad company, to ask whether complaints had been made by other parties of substitution before shipment, where the goods were carried to the railroad station by the trucking corporation employed by the plaintiff, and especially where the goods were carried by the same driver, where no proof was attempted that the complaints were well founded or that any substitution had been made in other cases.

Where one receives a check sent in payment of a claim in suit under such circumstances that he does not wish to accept it, he must return it or, at least, offer to return it upon the trial or he cannot have judgment for the amount of the check.

APPEAL by the plaintiffs, Harry Breslow and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 22d day of January, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on or about the same day denying plaintiffs' motion to set aside the verdict and for a new trial made upon the minutes.

*Abraham J. Halprin* of counsel [*I. Maurice Wormser* with him on the brief], for the appellants.

*Jacob Aronson* of counsel [*Alex S. Lyman,* attorney], for the respondent.

SMITH, J.:

In this case the plaintiffs sold to the defendant at St. John, N. B., certain merchandise. This sale was orally made and the merchandise was to be sent as soon as possible. Prior sales had been made and shipments had been made over the New York Central railroad to Malone, and from there transferred to the Canadian Pacific railroad which carried the goods to St. John. When these goods reached the defendant at St. John they were opened and one of the boxes was found to contain refuse matter and rubbish. There were several New York city telephone books and New York city newspapers, leading to the inference that boxes of rubbish had been substituted for the boxes that had been packed for the purpose of performance of the order in New York city. The trucking for the plaintiffs' firm was done by Girard Bros. who in this transaction were represented by Frank Girard. The truckman who swears that he delivered the goods was one Testino. The evidence of Girard and Testino is to the effect that these boxes were taken direct from the plaintiffs' place of business to the trucking company's yard, and from there were taken by Testino to the railroad freight station, and the evidence of Girard and Testino, both of them, is to the effect that no substitution was made while in their possession and before the goods reached the New York Central railroad freight station. The question was properly submitted to the jury as to whether this substitution had been made before or after the goods reached the New York Central railroad. The jury has found that the substitution was made before and has found a verdict for the defendant, and it is from the judgment entered upon this verdict and from the order denying the motion for a new trial that this appeal is taken.

By reason of the fact that this rubbish consisted of New York city telephone books and New York city newspapers the jury were authorized to find that the substitution was made

in New York city and before the goods reached the railroad company. But that was a question of fact and the defendant, in order to sustain this defense that the substitution was made in New York city, was allowed to ask whether complaints had been made by other parties of substitution before shipment where the goods were carried to the railroad station by this trucking company, and especially where the goods were carried by Testino, and furthermore, the court allowed testimony to the effect that not only were complaints made but that a private detective was engaged to watch Testino. This testimony was admitted over the plaintiffs' objection and exception. This, I think, was clearly error. No proof was attempted that these complaints were well founded or that any substitution had been made in other cases in which the complaints were made, but simply evidence of the making of the complaint and of the employment of a detective to watch Testino. The only question here is the delivery of this particular shipment. Testino had sworn specifically to such delivery. Such evidence as was here offered over the plaintiffs' objection would be most mischievous in an action before a jury and I think requires the reversal of the judgment and order and the granting of a new trial.

In Wigmore on Evidence (Vol. 2, p. 1110) it is stated: " (3) In Courts adopting either of the above attitudes, attention is sometimes given to distinguish misconduct itself from a mere accusation of misconduct. Where this is done, it follows that a mere arrest or indictment will not be allowed to be inquired after; since the fact of arrest or indictment is quite consistent with innocence, and since the reception of such evidence is merely the reception of somebody's hearsay assertion as to the witness's guilt. To admit this would involve a violation both of the Hearsay rule and of the rule forbidding extrinsic testimony of misconduct. The only possible ground for allowing the extraction of such facts is that the merely having been arrested or charged is a disgraceful situation which indicates something lacking in the witness's respectability of character. Such a notion is quite consonant with social ideas in England, at least in a former generation; accordingly we find the fact of arrest or indictment is there treated (and indeed assumed without question) as relevant, in

the rulings of the early 1800s. But this notion has no sound justification, and it carries the injustice of subjecting the witness to suspicion without giving him an opportunity to clear it away. It should be understood by all Courts that the only relevant circumstance is actual conduct — i. e. the fact, not the charge, of having misbehaved. If it is improper to prove this by extrinsic testimony on the stand, it is doubly improper to attempt to prove it by hearsay, and trebly improper when accompanied by a prohibition of any rebuttal of the hearsay by the witness or by others on his behalf."

It has been held to be inadmissible to ask either a party or a witness whether he has been indicted or arrested for another crime. (See *People* v. *Crapo,* 76 N. Y. 288; *People* v. *Brown,* 72 id. 571; *Ryan* v. *People,* 79 id. 593.) If you cannot show that a witness had been indicted and arrested, with much less reason is it permissible to show that complaint had been made of substitutions in cases where the witness had done the trucking or that detectives had been hired to watch the witness. It seems impossible to conceive of more flagrant hearsay evidence for the admission of which no authority whatever is shown.

One question is raised in the brief of counsel which, in view of the order granting a new trial, should be here referred to.

There were two boxes shipped. One of them was found to contain rubbish entirely and the other was found to contain part rubbish and some of the goods that were ordered. The defendant sent a check for the payment of the goods that were actually received. That check at the time of the trial had not been cashed by the plaintiffs, but was still in the plaintiffs' possession, and was produced by the plaintiffs upon the trial.

The claim of the plaintiffs is that the plaintiffs were entitled at least to a judgment for this amount, as the check could not be deemed a payment of the bill for the goods actually received. If the plaintiffs had intended to rely upon their cause of action for these goods, they should have returned the check. The check was not even offered to the defendant upon the trial of the action and it might get into the hands of a *bona fide* holder and be collected at any time. If the plaintiffs would seek to recover the amount of this check for the value of the goods that were actually received they should either

have returned the check or at least offered the check back upon the trial so that the defendant could not in any event be subjected to a double liability of a judgment and payment of the check which might thereafter be passed to the *bona fide* holder.    Plaintiffs, therefore, were not entitled to the judgment for this amount.

The judgment and order should be reversed and a new trial granted, with costs to appellants to abide the event.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.